1

2

3

4

5

6

7           UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE
8

9   DEBRA KAY HELTON (f.k.a. Debra          NO.  C13-382-RAJ-JPD
    Kay Turpin),

10                 Plaintiff,

11       v.                                  REPORT AND
                                             RECOMMENDATION
12   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
13
                   Defendant.
14

15          Plaintiff Debra Kay Helton appeals the final decision of the Commissioner of the Social

16   Security Administration ("Commissioner") which denied her applications for Disability

17   Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

18   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

19   the Court recommends that the Commissioner's decision be AFFIRMED.

20                I.        FACTS AND PROCEDURAL HISTORY

21          Plaintiff is a 54 year old woman with at least a high school education.  Administrative

22   Record ("AR") at 127, 141.  Her past work experience includes employment as a salesperson,

23   shoe salesperson, cashier, housekeeper, bakery clerk, and painter's helper.  AR at 23, 51-52.

24   Plaintiff was last gainfully employed in March 2006.  AR at 141.

REPORT AND RECOMMENDATION - 1

On May 10, 2010, plaintiff filed an application for DIB, alleging disability beginning on October 1, 2008.  AR at 127-28.  Her date last insured is December 31, 2010.  AR at 14, 127, 130.  Plaintiff asserts that she is disabled due to dysthymic disorder, anxiety disorder, cluster B personality traits, degenerative disc disease of the cervical and lumbar spine, irritable bowel syndrome, bilateral hand pain, and migraine headaches.  AR at 16, 140.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 58-59, 60-62, 66-70.  Plaintiff requested a hearing, which took place on July 20, 2011.  AR at 30-57.  On September 23, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform other jobs existing in significant numbers in the national economy, such as garment bagger and surveillance monitor.  AR at 14-25.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 4, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.       JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION - 2

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Helton bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.   DECISION BELOW

On September 23, 2011, the ALJ issued a decision finding the following:

1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2.   The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of October 1, 2008 through the date last insured of December 31, 2010.

3.   Through the date last insured, the claimant had the following severe impairments: dysthymic disorder, anxiety disorder, cluster B personality traits, degenerative disc disease of the cervical and lumbar spine, irritable bowel syndrome (IBS), and pain in her right hand and thumb and left hand.

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). She is right hand dominant. She could have used her right hand a total of six out of eight hours. She could have performed work involving simple and repetitive tasks. She could have had no contact with the public, and only occasional contact with supervisors

and coworkers.  She also would have had on average one unscheduled absence per month.

6.     Through the date last insured, the claimant was unable to perform any past relevant work.

7.     The claimant was born on XXXXX, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date lasted insured.[2]

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2008, the alleged onset date, through December 31, 2010, the date last insured.

AR at 16-24.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ err by finding that plaintiff's migraine headaches were not a severe impairment at step two, and failing to include additional limitations relating to plaintiff's migraine headaches in the RFC?

2.     Did the ALJ err in evaluating plaintiff's credibility?

3.     Did the ALJ's RFC account for all limitations supported by the record?

Dkt. 13 at 1.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   <u>The ALJ Reasonably Found Plaintiff's Migraine Headaches Were Not a Severe Impairment at Step Two, And Declined to Include Additional Limitations Related to Migraine Headaches When Determining Plaintiff's RFC at Step Four</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ("SSR") 85–28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153–54).

In this case, the ALJ found that plaintiff's medical treatment records included references to migraines. AR at 17. The ALJ, however, determined that plaintiff's migraines were not a severe impairment because plaintiff "reported medications were effective in resolving these headaches." AR at 17.[3] The ALJ cited an April 29, 2011, treatment note which states: "Has had migraines since she was a child. Occurs 3-4 times a week; since going to chiropractor reduces freq[uency] of [headaches]. Starts in back of neck. Throbbing. Sees floaties in eyes when onset is about to occur. Last 1 hour. No nausea or vomiting. [Positive] for photophobia. Noise bothersome. Vicodin helpful. Took midrin; effective." AR at 337.

In determining plaintiff's RFC, the ALJ also rejected limitations based on migraines assessed by examining doctor Gary Gaffield, D.O., and State agency physician Robert

---

[3] The ALJ cites 13F/2 (AR at 333), however, the text the ALJ references is actually located at 13F/6 (AR at 337). The ALJ's citation to 13F/2 is a harmless typographical error.

Hoskins, M.D., because the ALJ found the migraines were effectively controlled with medication and were not severe.  AR at 22-23, 268, 315.  Specifically, Dr. Gaffield opined that "she would be advised to avoid working around excessive noise and chemicals due to her history of migraines."  AR at 268.  The ALJ noted that "Dr. Gaffield's opinions are generally consistent with the record and are given weight, except as already noted the severity of the claimant's alleged migraine headaches is not supported by the record.  Therefore Dr. Gaffield's limitations based on the claimant's reported migraines, are also not supported by the record."  AR at 23.  Similarly, state agency physician Robert Hoskins, M.D., opined on December 15, 2010 that plaintiff "has migraines 2-3x/month which are usually resolved w/ aspirin and Tylenol.  No neurological assessment was done . . . Avoid working around excessive noise and chemicals due to her hx of migraines."  AR at 315.  For the same reason that the ALJ rejected these limitations assessed by Dr. GAffield, the ALJ gave Dr. Hoskins' opinion only "some weight."  AR at 23.

Plaintiff contends that the ALJ first erred by finding her migraine headaches were not a severe medically determinable impairment and further erred by rejecting limitations due to migraine headaches when determining her RFC.  Dkt. 13 at 5.  Plaintiff asserts that even with "effective" treatment, the evidence shows her migraines cause more than minimal limitations in her ability to work.  *Id.*  For example, plaintiff testified at the hearing that she will often wake up with a headache, take an aspirin and then lie back down until it goes away.  *Id.*  She also testified that lights at the call center where she worked triggered her migraines.  AR at 37.  Thus, plaintiff asserts that medication is not always effective.

The record shows that plaintiff has been diagnosed with migraine headaches.  AR at 244, 267, 339.  However, the ALJ's conclusion that plaintiff's migraine headaches are controlled with medication is supported by substantial evidence in the record, as plaintiff made

REPORT AND RECOMMENDATION - 8

1   the observations the ALJ relies upon.  In April 2011, plaintiff reported that Vicodin was

2   "helpful" and midrin was "effective" for treating her migraines.  AR at 337.  A July 2010

3   report by David Sandvik, M.D., noted plaintiff stated that "she has intermittent headaches."

4   AR at 271.  Similarly, the July 2010 report by Dr. Gaffield noted, "[plaintiff] states that she has

5   migraines two or three times a month, usually resolved with aspirin or Tylenol."  AR at 264.

6        The Ninth Circuit in *Warre* held that "[i]mpairments that can be controlled effectively

7   with medication are not disabling for the purpose of determining eligibility for . . . benefits."

8   *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Based on the

9   foregoing, the ALJ reasonably concluded that plaintiff's migraine headaches were not a severe

10  impairment because they had no more than a minimal effect on her ability to work because

11  they were controlled or resolved with medication.

12       Plaintiff argues that even if her migraine headaches were properly determined to be

13  non-severe, the ALJ was required to consider all of the limitations imposed by her

14  impairments, even those that are not severe, when making his RFC.  Dkt. 13 at 5.  *See* 20

15  C.F.R. § 404.1545(a)(2); *see also* SSR 96–8p ("While a 'not severe' impairment(s) standing

16  alone may not significantly limit an individual's ability to do basic work activities, it may —

17  when considered with limitations or restrictions due to other impairments — be critical to the

18  outcome of a claim."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

19  Cir. 2008) (the "ALJ is required to consider all of the limitations imposed by the claimant's

20  impairments, even those that are not severe").  Plaintiff contends that the ALJ erred in

21  explicitly rejecting any limitations based on migraines assessed by Dr. Gaffield and Dr.

22  Hoskins because even though he found the migraines were effectively controlled with

23  medication, it makes no sense to reject environmental limitations aimed at preventing

24  migraines.  AR at 22-23, 268, 315.

1     The Commissioner responds that because the ALJ properly found plaintiff's migraines

2     non-severe at step two, he could properly disregard the doctors' opinions that plaintiff had

3     limitations from her migraine headaches.  Dkt. 14 at 8-9.  The Commissioner asserts that an

4     opinion that is conclusory, brief and unsupported by the record as a whole is properly

5     discredited.  Dkt. 14 at 9 (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190,

6     1195 (9th Cir. 2004)).

7     The ALJ did not err by declining to include additional limitations in the RFC

8     assessment relating to plaintiff's migraine headaches, as an ALJ is not required to incorporate

9     additional limitations he found unsupported by the record.  *Batson*, 359 F.3d at 1197–98;

10    *Osenbrock v. Apfel*, 240 F3d 1157, 1163–65 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d

11    747, 756–57 (9th Cir. 1989).  As discussed above, the ALJ expressly rejected the opinions of

12    Dr. Gaffield and Dr. Hoskins that plaintiff should avoid working around excessive noise and

13    chemicals due to her history of migraines, stating that "Dr. Gaffield's limitations based on the

14    claimant's reported migraines . . . [are] not supported by the record."  AR at 23 (citing AR at

15    268).  Similarly, the ALJ rejected Dr. Hoskins' opinion because although "[h]e also felt she

16    should avoid concentrated exposure to noise, . . . fumes, odors, dusts, or gases . . . . The extent

17    of the recommended limitations provided by the State agency medical consultant is also not

18    fully supported by the record, as discussed in more detail previously in this decision.  For that

19    reason, his opinions are given only some weight."  AR at 23 (citing AR at 315).  As the ALJ

20    reasonably found that plaintiff's migraines are resolved with medication like Tylenol (AR at

21    264, 337), the ALJ could decline to include additional environmental restrictions in the RFC

22    assessment.

23

24

1     Accordingly, the ALJ did not err at step two in evaluating the severity of plaintiff's

2   migraine headaches, or in evaluating the opinions of Dr. Gaffield and Dr. Hoskins and

3   formulating his RFC assessment.

4     B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility

5             1.     *Standard for Evaluating Credibility*

6     A determination of whether to accept a claimant's subjective symptom testimony

7   requires a two-step analysis.  20 C.F.R. § 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First,

8   the ALJ must determine whether there is a medically determinable impairment that reasonably

9   could be expected to cause the claimant's symptoms.  20 C.F.R. § 416.929(b); *Smolen*, 80 F.3d

10  at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying

11  impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms

12  solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947

13  F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722.  Absent affirmative

14  evidence showing that the claimant is malingering, the ALJ must provide "clear and

15  convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*,

16  157 F.3d at 722.

17    When evaluating a claimant's credibility, the ALJ must specifically identify what

18  testimony is not credible and what evidence undermines the claimant's complaints; general

19  findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

20  consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

21  inconsistencies in testimony or between testimony and conduct, daily activities, work record,

22  and testimony from physicians and third parties concerning the nature, severity, and effect of

23  the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Soc. Sec.*

24  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

REPORT AND RECOMMENDATION - 11

2.     *The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Credibility*

The ALJ provided a number of clear and convincing reasons to discount plaintiff's credibility.  The ALJ found that plaintiff's "medically determinable impairments could reasonably have been expected to cause the alleged symptoms; however, I find the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons discussed below."  AR at 20.  Specifically, the ALJ discounted plaintiff's credibility based upon the fact that (1) plaintiff's statements regarding the extent of her symptoms and limitations were inconsistent with the objective evidence, (2) plaintiff has received conservative treatment, (3) plaintiff did not seek mental health treatment, (4) plaintiff's daily activities suggest greater functioning than alleged, (5) plaintiff's recent work activity and statements about work suggest an ability to work, and (6) plaintiff's receipt of unemployment benefits suggest that she continued to look for full-time work after she claims to have been disabled.  AR at 20-21.

(a)     *Unsupported by Objective Medical Evidence*

First, the ALJ found the objective medical evidence does not support the level of limitations alleged by plaintiff.  AR at 20.  He also noted that "many of her complaints appear to concern symptoms that are longstanding, and there is no evidence of a worsening of these conditions during the relevant period."  AR at 20.  The ALJ acknowledged that plaintiff does have degenerative disc disease, but found that the objective findings in the medical record do not support plaintiff's subjective pain complaints, which the ALJ noted were primarily muscular in nature.  AR at 20.  The ALJ noted that in June 2010 plaintiff treated with her primary care provider two days after a motor vehicle accident.  She was diagnosed with whiplash and prescribed Vicodin.  AR at 20, 352-54.  Yet in July 2010, Dr. Gaffield found no

1    muscle spasms, tenderness, or trigger points along her spine on examination.  AR at 20, 266.

2    She had full strength, full range of motion, no pain in her lower extremities, and she displayed

3    no difficulty or discomfort walking or removing her shoes.  AR at 20, 266.  In April 2011,

4    plaintiff's primary care provider found no midline bony tenderness, no paraspinal muscle

5    tenderness, straight leg raise was negative, range of motion of back was intact, and she had

6    normal strength, gait, and sensation.  AR at 20, 335.  Two weeks later, plaintiff had tenderness

7    of her spine and painful range of motion, but exhibited no spasms, normal gait, normal strength

8    and sensation.  AR at 20, 337-39.

9         Plaintiff argues that the ALJ erred by rejecting her testimony because it was not

10    supported by objective medical evidence, stating that an ALJ may not reject excess symptom

11    testimony based solely on a lack of objective medical evidence.  Dkt. 13 at 6 (citing SSR 96-

12    7p).  However, the Court agrees with the Commissioner that the ALJ did not rely solely on a

13    lack of supporting objective medical evidence to find plaintiff's report of symptoms less than

14    credible.  The ALJ may properly consider the objective medical evidence in evaluating

15    plaintiff's subjective complaints, so long as additional reasons are also provided.  20 C.F.R. §

16    404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in

17    making reasonable conclusions about the intensity and persistence of your symptoms and the

18    effect those symptoms, such as pain, may have on your ability to work. . . . However, we will

19    not reject your statements . . . solely because the available objective medical evidence does not

20    substantiate your statements.").  *See also Burch*, 400 F.3d at 681 ("Although lack of medical

21    evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ

22    can consider in his credibility analysis."); SSR 96–7, *2–3 (the ALJ "must consider the entire

23    case record, including the objective medical evidence" in determining credibility, but

24

REPORT AND RECOMMENDATION - 13

1   statements "may not be disregarded solely because they are not substantiated by objective

2   medical evidence").

3          As the ALJ provided additional reasons for finding plaintiff's testimony not credible,

4   plaintiff does not demonstrate error in the ALJ's consideration of this factor.  Inconsistency

5   between plaintiff's allegations and the objective medical evidence was one relevant factor for

6   the ALJ to consider, among others, in determining plaintiff's credibility.

7                    (b)    *Conservative Treatment*

8          Second, the ALJ found plaintiff's testimony about disabling pain unconvincing because

9   she "received essentially only routine or conservative treatment for her complaints."  AR at 20.

10  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony

11  regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007)

12  (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding physician's

13  prescription for conservative treatment only to be suggestive of both lower level of pain and

14  functional limitation)); *see also Meanel*, 172 F.3d at 1114 (rejecting subjective pain complaints

15  where plaintiff's "claim that she experienced pain approaching the highest level imaginable

16  was inconsistent with the 'minimal, conservative treatment' that she received").

17         Plaintiff argues that the ALJ failed to specify what evidence supports his contention

18  that plaintiff received only routine or conservative treatment.  Dkt. 13 at 8.  Plaintiff asserts

19  that she had more than routine treatment for back pain, noting that she received regular

20  chiropractic treatment and prescription pain medication.  *Id.*

21         However, the ALJ specifically noted that plaintiff had received chiropractic treatment

22  and was prescribed Vicodin for pain relief.  AR at 20.  The Court cannot agree with plaintiff's

23  argument that the ALJ unreasonably determined that pain medication and chiropractic

24  treatment constituted conservative measures.  *Andrews*, 53 F.3d at 1039.  When the evidence is

1   susceptible to more than one rational interpretation, the Court must uphold the Commissioner's

2   interpretation. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The ALJ did

3   not err.

4                               (c)      *Failure to Seek Treatment*

5            Third, the ALJ discounted plaintiff's testimony because plaintiff did not seek any

6   mental health treatment despite allegations that she was depressed "all the time" for the past

7   three years. AR at 21. The ALJ noted that plaintiff attended counseling and was prescribed

8   Prozac in the 1990s, which she felt was helpful. AR at 21, 269. Thus, the ALJ found

9   plaintiff's failure to seek treatment, together with the fact that she had positive results with

10  treatment in the past, suggests her limitations are not as serious as alleged. AR at 21.

11           Plaintiff argues that the ALJ erred in discounting her credibility based on a failure to

12  seek treatment. She asserts the record shows she was unable to seek mental health treatment

13  due to her inability to pay for treatment and lack of insurance for such treatment. Dkt. 13 at 8-

14  9. The Commissioner disputes plaintiff's assertion, noting that plaintiff was able to obtain

15  treatment for her physical impairments despite a lack of insurance. Dkt. 14 at 14.

16           The Court agrees with plaintiff that the ALJ improperly inferred that because she did

17  not seek mental health treatment, she did not need such treatment. Instead, the record suggests

18  that plaintiff did not seek treatment because she did not have any medical insurance and lacked

19  available resources to obtain treatment during the relevant period. AR at 269, 271, 352. The

20  Commissioner concedes this fact, and simply points out that plaintiff was nevertheless able to

21  procure medical treatment for her physical problems following her 2010 motor vehicle

22  accident. Dkt. 14 at 14 (citing AR at 352). The ALJ may consider lack of treatment, including

23  mental health treatment, in his credibility determination. *See Burch*, 400 F.3d at 681.

24  However, the ALJ is also obliged to consider "any explanations that the individual may

REPORT AND RECOMMENDATION - 15

1    provide, or other information in the case record, that may explain infrequent or irregular

2    medical visits or failure to seek medical treatment."  SSR 96–7p; *Orn*, 495 F.3d at 638

3    ("'Disability benefits may not be denied because of the claimant's failure to obtain treatment

4    [he or she] cannot obtain for lack of funds.'") (quoting *Gamble v. Chater*, 68 F.3d 319, 321

5    (9th Cir. 1995)).  Here, the ALJ failed to consider any explanation for plaintiff's failure to seek

6    mental health treatment.

7          Accordingly, plaintiff's failure to seek mental health treatment was not a valid reason

8    for the ALJ to discount her testimony.  The fact that one reason provided by the ALJ for

9    discrediting a claimant's testimony should be properly discounted does not render the ALJ's

10   overall determination invalid, however, as long as the overall determination remains supported

11   by substantial evidence.  *See Tonapetyan*, 242 F.3d at 1148.  Thus, the ALJ's error in analyzing

12   plaintiff's failure to seek mental health treatment did not undermine the ALJ's overall

13   credibility assessment.

14                    (d)     *Plaintiff's Daily Activities*

15         Fourth, the ALJ found plaintiff's daily activities were inconsistent with her alleged

16   functional limitations.  AR at 21.  Specifically, the ALJ noted plaintiff is able to tend to her

17   personal care needs and personal finances, use a computer, perform light housework and

18   laundry, prepare daily meals, and drive.  AR at 21.  In addition, "the record also shows during

19   the relevant period she attended school, studying graphic design."  AR at 21.  As discussed

20   further below, the ALJ also pointed to plaintiff's testimony that "she started working May 3,

21   2011, as a call center employee," answering the telephone and soliciting donations for eight-

22   hour days, although she has had significant attendance problems due to her medical conditions.

23   AR at 21.  The ALJ asserted that although this work may not qualify as substantial gainful

24

REPORT AND RECOMMENDATION - 16

activity, "it does indicate the claimant's daily activities have been, at least at times, somewhat greater than the claimant generally reported." AR at 21.

Activities that are engaged in by a claimant that are inconsistent with a claimed level of impairment are a proper basis upon which to formulate an adverse credibility determination. 20 C.F.R. § 404.1529(c)(i). *See Molina v. Astrue,* 674 F.3d 1104, 1112–13 (9th Cir. 2012). The ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, and may also consider how a claimant's activities of daily living contradict his allegations of total disability. *Id.* at 1113.

The ALJ did not err by concluding that plaintiff's reported daily activities, which include tending to personal care needs and personal finances, using a computer, performing household chores including laundry, preparing meals, and driving, appeared inconsistent with her claims of total disability. AR at 21. An ALJ may properly consider a plaintiff's "daily activities, such as . . . cooking, housekeeping, laundry, shopping" as evidence that is inconsistent with a claim of disability. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). *See also Stubbs-Danielson*, 539 F.3d at 1175 (citing with approval the ALJ's finding that "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances . . . tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.").

The ALJ also reasonably noted that plaintiff's college attendance for graphic design, and recent efforts to work-full time, appeared inconsistent with her allegations of disability. The record shows plaintiff attended school during the relevant period, and the ALJ points to an April 2009 progress note by treating provider Emily Savage, M.D., which states, "fulltime

mom now and student – studying graphic design." AR at 21, 237.  An ALJ is permitted to draw

an adverse inference as to the plaintiff's credibility when the plaintiff is able to engage in

activities inconsistent with alleged symptoms and limitations.  *See Burch*, 400 F.3d at 679

(holding that evidence of activities involving skills that could be transferred to the workplace

supported the ALJ's adverse credibility determination).  *See also Matthews v. Shalala*, 10 F.3d

678, 680 (9th Cir. 1993) (finding that plaintiff's ability to attend school three days a week was

"an activity which is inconsistent with an alleged inability to perform all work.").

Accordingly, the ALJ did not err in finding that plaintiff's daily activities contradicted her

allegations of disabling impairments.

(e)     *Recent Work Activity and Related Statements*

As mentioned above, the ALJ also relied upon plaintiff's recent work activity as the

basis for undermining her credibility.  AR at 21.  The ALJ noted that plaintiff was working at a

call center at the time of the hearing, although this work did not begin until May 3, 2011.  AR

at 21.  The ALJ noted that plaintiff's duties included answering the telephone and using a

computer all day.  He commented that plaintiff "testified she had significant attendance

problems due to her medical conditions and recently had some disciplinary action at work."

AR at 21.  Although the ALJ determined this work was not substantial gainful activity, the ALJ

found "it does indicate [plaintiff's] daily activities have been, at least at times, somewhat

greater than the claimant has generally reported."  AR at 21.

Plaintiff argues that the ALJ improperly relied on her work activity to discredit her

testimony.  Dkt. 13 at 10.  She contends that although she works as a call center employee, she

had only been able to work three to five days a month in August 2011.  *Id.* (citing AR at 37-

38).  She asserts substantial evidence does not support the ALJ's interpretation of the evidence,

given her "inability to meet her employer's expectations with regard to absenteeism had resulted in disciplinary action." *Id.*

An ALJ properly considers a claimant's work history in evaluating credibility. *Smolen*, 80 F.3d at 1284. Although plaintiff testified she had attendance problems and was only able to work three to five hours in August 2011, the ALJ properly considered this testimony in evaluating plaintiff's credibility. AR at 21. Such activity need not equal substantial gainful activity to show that the claimant engages in activity inconsistent with the alleged disability. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). As noted above with respect to plaintiff's other activities, the ALJ reasonably concluded plaintiff's work activity undercut her claims regarding the severity of her impairments and their impact on her ability to work.

The ALJ also found that plaintiff's testimony that she started her new job as a call center employee on May 3, 2011 because her husband had moved out and she "had to get a job," AR at 34, "suggests she was able to work in the past, as she is now, but she just chose not to work because her husband supported their household." AR at 21. In determining a plaintiff's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements and a claimant's work record. *Smolen*, 80 F.3d at 1284. The ALJ could reasonably conclude that plaintiff's statement, coupled with her recent return to the workforce, suggested that her capabilities were greater than alleged.

(f)    *Unemployment Benefits*

Finally, the ALJ rejected plaintiff's subjective complaints based on her receipt of unemployment benefits. AR at 21. The Commissioner concedes, however, that because the record does not establish plaintiff held herself out as available for full-time work in filing for employment benefits, the ALJ's reliance on unemployment benefits as a basis to find her not credible is not supported by substantial evidence. Dkt. 14 at 18 (citing *Carmickle v. Comm'r of*

REPORT AND RECOMMENDATION - 19

1   *the Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("While receipt of unemployment

2   benefits can undermine a claimant's alleged inability to work fulltime . . . the record here does

3   not establish whether Carmickle held himself out as available for full-time or part-time work.

4   Only the former is inconsistent with his disability allegations.  Thus, such basis for the ALJ's

5   credibility finding is not supported by substantial evidence.").  The Commissioner argues,

6   however, this error was harmless because the ALJ's remaining reasons were adequately

7   supported by substantial evidence in the record.

8        As discussed above, an ALJ's use of an invalid reason for finding a claimant not

9   credible may be harmless if the remaining reasons and the ultimate credibility finding were

10   supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162–63 (holding that the

11   ALJ's improper reliance on unemployment benefits to discredit claimant's credibility was

12   harmless error, as the ALJ's other reasons were supported by substantial evidence).  Here, the

13   ALJ's clear and convincing reasons for finding plaintiff less than credible far outweigh his

14   reliance on two invalid reasons.  Accordingly, the Court finds that substantial evidence

15   supports the ALJ's credibility determination in this case.

16        C.    <u>The ALJ's RFC Accounts for All Limitations Supported by the Record</u>

17        At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

18   assess her work-related abilities on a function-by-function basis, including a narrative

19   discussion.  *See* 20 C.F.R. § 404.1545; SSR 96-8p.  RFC is the most a claimant can do

20   considering his or her limitations or restrictions.  *See* SSR 96-8p.  The ALJ must consider the

21   limiting effects of all of plaintiff's impairments, including those that are not severe, in

22   determining RFC.  20 C.F.R. § 404.1545(e); SSR 96-8p.

23        Plaintiff's contentions regarding the ALJ's failure to include additional limitations in

24   the RFC assessment relating to plaintiff's migraine headaches have already been addressed,

REPORT AND RECOMMENDATION - 20

and rejected.  *See* Dkt. 13 at 12.  The ALJ did not err in assessing the medical evidence relating to plaintiff's migraine headaches.

Plaintiff further argues that the ALJ erred in assessing plaintiff's RFC because Dr. Sandvik's opinion regarding plaintiff's mental health, upon which the ALJ relied, was ambiguous, requiring the ALJ to recontact Dr. Sandvik for further information.  Dkt. 13 at 13. Plaintiff asserts that the record is ambiguous because Dr. Sandvik did not indicate the severity of the opined limitations.  Specifically, plaintiff contends that while Dr. Sandvik opined that "[h]er interpersonal situation is very complicated," AR at 271, he did not indicate what kind of "complications" might arise from her "interpersonal situation."  *Id*.  She further contends that while the ALJ found plaintiff would have one unscheduled absence a month, Dr. Sandvik's opinion "supports [plaintiff] would have at least one more daily absence per month, if not a few partial days."  *Id*.

Contrary to plaintiff's argument that the ALJ was obligated to recontact Dr. Sandvik to inquire further, such a process was not necessary here because the ALJ did not find Dr. Sandvik's opinion to be ambiguous or inadequate.  AR at 22.  *See Bayliss*, 427 F.3d at 1217 ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination."); *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").  The ALJ's reliance on Dr. Sandvik's findings and opinions, coupled with the State agency consultants' opinions, more than supports the RFC he assessed. Plaintiff's attempt to manufacture an ambiguity in the record, premised solely on her disagreement with the ALJ's RFC determination, is unavailing.

1

## VIII.   CONCLUSION

2   　　　The role of this Court is limited.  As noted above, the ALJ is responsible for

3   determining credibility, resolving conflicts in medical testimony, and resolving any other

4   ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to

5   more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

6   *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff

7   suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

8   interpretation.

9   　　　For the foregoing reasons, the Court recommends that the final decision of the

10  Commissioner be AFFIRMED, and this matter DISMISSED with prejudice.  A proposed order

11  accompanies this Report and Recommendation.

12  　　　DATED this 28th day of October, 2013

13

14  　　　　　　　　　　　　　　　　　　　　*James P. Donohue*
　　　　　　　　　　　　　　　　　　　　_____

15  　　　　　　　　　　　　　　　　　JAMES P. DONOHUE
　　　　　　　　　　　　　　　　　United States Magistrate Judge

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 22